Slip Op. 09-4

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————
                                                            :
PEERLESS CLOTHING INTERNATIONAL, INC., :
                                                            :
                          Plaintiff,            :
                                                            :          Before:        WALLACH, Judge
          v.                                    :          Court No:     03-00537
                                                            :
UNITED STATES,                                  :          **PUBLIC VERSION**
                                                            :
                          Defendant.            :
———————————————————————:

[Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART;
Defendant's Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN
PART.]

                                        Dated: January 13, 2009

Sandler, Travis & Rosenberg, P.A. (Arthur K. Purcell) for Plaintiff Peerless Clothing
International, Inc.

Gregory G. Katsas, Assistant Attorney General; Barbara S. Williams, Attorney in Charge,
International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S.
Department of Justice (Edward F. Kenny); and Chi S. Choy, Office of the Assistant Chief
Counsel, U.S. Customs and Border Protection, of Counsel, for Defendant United States.

## OPINION

**Wallach, Judge:**

# I
# INTRODUCTION

Plaintiff Peerless Clothing International, Inc. ("Peerless USA") contests the appraisement and assessment of certain duties by Defendant United States Bureau of Customs and Border Protection ("Customs") on garments imported into the United States, and seeks a refund of all challenged duties that were paid.  Peerless USA claims that Customs violated: (1) 19 U.S.C. § 1625(c) by modifying "treatment" of its goods without the statutorily required review and comment period, and (2) 19 U.S.C. § 1401(a) by replacing Peerless's expense allocation methodology that complied with generally accepted accounting principles ("GAAP").  Jurisdiction pursuant to 28 U.S.C. § 1581(a) is uncontested by the parties.  The court concludes that Customs did not violate 19 U.S.C. § 1625(c), but did improperly replace the importer's GAAP-compliant allocation for the expense categories at issue other than warehousing costs.  Accordingly, Plaintiff's Motion for Summary Judgment is Granted in Part and Denied in Part, and Defendant's Cross-Motion for Summary Judgment is Granted in Part and Denied in Part.

# II
# BACKGROUND

This dispute challenges Customs' allocation of expenses between Peerless USA and Peerless Clothing, Inc. ("Peerless Canada").  Peerless USA and Peerless Canada are separate legal entities, Plaintiff's Statement of Material Facts for Which There is No Genuine Issue to be Tried ("Plaintiff's Facts") ¶ 4; Defendant's Response to Plaintiff's Statement of Material Facts Not in Issue ("Defendant's Fact Response") ¶ 4, that share common senior management and corporate officers. Memorandum of Law in Support of Plaintiff's Motion for Summary

Judgment ("Plaintiff's Motion") at 4 n.1.  Peerless Canada is the largest manufacturer of men's wool suits in North America and created Peerless USA in the 1980s to import merchandise into the United States. Id. at 4.  Peerless Canada operates a plant in Montreal. Defendant's Additional Statement of Undisputed Material Facts ¶ 1 ("Defendant's Additional Facts"); Plaintiff's Response to Defendant's Additional Statement of Undisputed Facts ("Plaintiff's Response to Additional Facts") ¶ 1.  Peerless USA is a wholesaler of men's clothing having offices in New York and a warehouse and distribution center in St. Albans, Vermont. Plaintiff's Facts ¶ 5; Defendant's Fact Response ¶ 5.  Although Peerless USA and Peerless Canada are collectively referred to as "Peerless", Peerless USA is the Plaintiff in this action as the importer of record. Complaint ¶¶ 2, 3; Answer ¶¶ 2, 3.

The merchandise at issue in this case was purchased by Peerless USA through related party transactions, imported into the United States, and either delivered to customers or shipped to the Peerless USA warehouse in Vermont. Plaintiff's Facts ¶ 6; Defendant's Fact Response ¶ 6. For Customs' appraisement, Peerless Canada allocated expenses between itself and Peerless USA by including the percentage of the expenses it deemed in support of the production of goods in the cost of goods sold to Peerless USA, and excluding the expenses it deemed allocable to Peerless USA's sales and sales support activities. Plaintiff's Facts ¶ 11; Defendant's Fact Response ¶ 11.  Peerless claims to have used a computed value method to calculate the intercompany price. Plaintiff's Facts ¶ 27; Plaintiff's Motion at 9 (citing Ex. 12, Deposition of Gerald Horn at 16–17).  Peerless calculated intercompany price using two types of invoices that Peerless Canada issued to Peerless USA: (1) the cost of manufacturing known as "cut, make, & trim" ("CMT"); and (2) the cost of fabric known as material purchase recovery ("MPR"). Plaintiff's Facts ¶ 27; Defendant's Fact Response ¶ 27.

In 1997, Customs initiated an audit of Peerless USA's importation of wool suits, sports jackets, and trousers for the period between April 1, 1996 and September 30, 1997. Plaintiff's Facts ¶¶ 40, 41; Defendant's Fact Response ¶¶ 40, 41.  Customs examined three types of invoices that Peerless Canada issued to Peerless USA: (1) CMT; (2) MPR; and (3) warehousing, general and administrative expenses known as "Warehousing and Expense Allocation" ("WEA").  Defendant's Confidential Memorandum in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion ("Defendant's Opposition and Cross-Motion") at 3, 24–25.  The WEA invoices between Peerless Canada and Peerless USA consist of eleven expense categories and were not declared to Customs. Id. at 25–26; Defendant's Additional Facts ¶ 8; Plaintiff's Response to Additional Facts ¶ 8.  Peerless USA claims that WEA is comprised of "only non-dutiable 'below the line' expenses: warehousing costs and non-production related selling expenses incurred by Peerless USA in Montreal." Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply and Response to Cross-Motion") at 19–20.

According to Peerless USA, "the sum of CMT and MPR invoices alone was adequate to recover the costs of production plus a profit (markup)". Plaintiff's Motion at 9.  Peerless USA did not declare the WEA warehousing costs incurred in Canada because it maintains that they are non-dutiable. Plaintiff's Reply and Response to Cross-Motion at 20.  For other WEA categories, Peerless USA states that although its allocation "roughly correlated to the 90/10 percent ratio of sales in the United States versus Canada, where appropriate Peerless would allocate to Peerless Canada an enhanced amount for certain items, to reflect the higher degree to which the manufacturer/seller Peerless Canada benefitted from the expense item." Plaintiff's Motion at 33. Peerless USA contends that these non-warehousing expenses on the WEA invoice "are unrelated

to production and the cost of goods because the production-related expenses and overhead are already allocated to, and captured in, the CMT invoice."[1] Plaintiff's Response and Cross-Motion at 20.

Customs auditors concluded "that most of the expenses on the WEA invoices that were paid by Peerless USA were not attributable to Peerless USA, but were actually Peerless Canada's own general and administrative expenses.  Therefore, the undeclared payments Peerless USA made to Peerless Canada should have been part of the dutiable value of the imported merchandise." Defendant's Opposition and Cross-Motion at 3.  A draft report of the audit findings was provided to Peerless USA in 1998. Id. at 23–24.  Before finalizing their report, Customs auditors sought internal advice from Customs Headquarters that resulted in the issuance of Customs Headquarters Ruling Letter Number 547108 (March 28, 2000) ("HQ 547108").  Plaintiff's Facts ¶¶ 43, 44; Defendant's Fact Response ¶¶ 43, 44.  This internal advice ruling was neither published in the Customs Bulletin nor made available for public comment before liquidation. Plaintiff's Facts ¶ 46; Defendant's Fact Response ¶ 46.

In HQ 547108, Customs agreed with the preliminary audit finding that Peerless USA owed additional dutiable value on all but three of the WEA categories.[2] Defendant's Opposition and Cross-Motion Ex. 3, HQ 574108.  The WEA warehouse costs invoiced by Peerless Canada to Peerless USA for the storage of the fabric pre-production and the storage of merchandise before shipping were found to be fully dutiable. Defendant's Opposition and Cross-Motion at 30,

---

[1] Plaintiff characterizes the warehousing and expense allocation ("WEA") invoice as "constitut[ing] the 'balance' of the intercompany overhead expenses; such expenses were incurred by Peerless Canada in Montreal and charged back to Peerless USA." Plaintiff's Post-Oral Argument Brief (November 9, 2007) at 4.

[2] The categories found not dutiable were: shipping truck rentals, selling expenses, and truck rental expenses.  Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 12; Defendant's Memorandum in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion ("Defendant's Opposition and Cross-Motion") Ex. 3, HQ 547108 (March 28, 2000) ("HQ 547108") at 3.

HQ 547108 at 6.  For the remaining WEA categories found dutiable, "Customs auditors

determined that the ratio of costs incurred by Peerless Canada to Peerless USA was

approximately 9.2 to 1.  Accordingly, 92.2 percent of the management salaries, data entry

salaries, office salaries and supplies, computer supplies, telephone [expenses] and buying salaries

were to be included in the price of the imported clothing." Defendant's Opposition and Cross-

Motion at 30, HQ 547108 at 9.

Customs issued the audit report in January 2001 that relied upon HQ 547108. Plaintiff's

Motion Ex. 7, Customs Audit Report 112-97-IMO-002 (January 23, 2001) ("Audit Report") at

8–9.  Customs calculated that Peerless owed additional dutiable value of $8,662,795 for fiscal

year 1996 and $12,268,073 for fiscal year 1997. Id. at 9.  Customs further calculated that

Peerless USA's: 226 fiscal year 1996 entries were undervalued by $4,339,576, resulting in an

applicable loss of revenue totaling $278,033.82; and 464 entries for fiscal year 1997 were

undervalued by $12,267,917, resulting in an applicable loss of revenue totaling $832,046.51. Id.

at 10.  Customs liquidated all of Peerless USA's entries under protest with an advance in value,

including the subject entries. Plaintiff's Facts ¶ 45; Defendant's Fact Response ¶ 45.  Peerless

USA's protest was filed on September 6, 2001, and denied through Customs Headquarters

Ruling Letter Number 548065 (September 6, 2002) ("HQ 548065").  Defendant's Opposition

and Cross-Motion Ex. 4, HQ 548065 at 1, 9.  Plaintiff initiated this action on August 5, 2003.

### III
### STANDARD FOR DETERMINATION OF CASE

A motion for summary judgment should be granted if "the pleadings, discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." USCIT R.56(c); see

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  An issue

of fact is to be considered "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party," and a fact will be material when it "might affect the

outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

An agency's regulation that implements a statute is "given controlling weight unless [it

is] arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural

Res. Def. Council, Inc., 467 U.S. 837, 843–44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Additionally, in matters of statutory construction, this court will show "great deference to the

interpretation given the statute by the officers or agency charged with its administration." Udall

v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965).  The agency's construction

need not be the only reasonable one, or even the same result this court would have reached had

the question arisen in the first instance in a judicial proceeding. Id. (citing Unemployment Comp.

Comm'n of Alaska v. Aragon, 329 U.S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136 (1946)).

In Customs cases, the court is charged with making findings of fact and conclusions of

law de novo. 28 U.S.C. § 2640(a).  When making these determinations, the role of the court is to

reach the correct result. Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

Although Customs classification and valuation rulings are not entitled to Chevron deference,

they are entitled to a degree of respect proportional to their "power to persuade." United States v.

Mead Corp., 533 U.S. 218, 235, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) (quoting Skidmore v.

Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)); Christensen v. Harris

County, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000).  These rulings, "while not

controlling upon the courts by reason of their authority, do constitute a body of experience and

informed judgment to which courts and litigants may properly resort for guidance." <u>Skidmore</u>,

323 U.S. at 140.  The amount of deference afforded an agency's determination varies with the

circumstances present in each case; in deciding the weight of a ruling, the court will consider

such factors as "the degree of the agency's care, its consistency, formality, and relative

expertness, and . . . the persuasiveness of the agency's position." <u>Mead</u>, 533 U.S. at 228

(citations omitted).

**IV**
**DISCUSSION**

Plaintiff first argues that Customs violated 19 U.S.C. § 1625(c) in changing the

"treatment" of Peerless USA's entries without providing a notice and comment period as the

statute requires.  Defendant counters that Peerless USA fails to meet the statutory and regulatory

requirements to establish a violation of 19 U.S.C. § 1625(c).  Plaintiff next argues that Customs

improperly replaced Peerless's allocation methodology that complied with GAAP and 19 U.S.C.

§ 1401a.  Defendant responds that it was not required to follow Peerless's allocation and that

Customs' appraisal is deserving of deference.  Each of Peerless's claims are considered in order

below.

**A**
**<u>Customs Did Not Violate the Treatment Statute</u>**

The "no change" method of liquidation at issue constitutes "treatment" pursuant to 19

U.S.C. § 1625(c).  The parties present conflicting interpretations of the regulation implementing

the treatment statute concerning the relevant time period for evidence of treatment.  This conflict

need not be reconciled because, using either time period, Peerless's entries that received

treatment were not "substantially identical" to those at issue in HQ 547108, as the treatment

statute requires.  Therefore, Customs did not violate 19 U.S.C. § 1625(c) despite the lack of

publication and comment period for HQ 547108.

## 1
## Statutory and Regulatory Overview

The treatment statute was enacted as part of the North American Free Trade Agreement

Implementation Act, Pub. L. No. 103-182 § 625(c), 107 Stat. 2057 (1993).  It provides, in

pertinent part, as follows:

> (c) Modification and revocation.
>   A proposed interpretive ruling or decision which would— . . .
>    (2) have the effect of modifying the treatment previously accorded by the
> Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin.  The Secretary shall give interested
> parties an opportunity to submit, during not less than the 30-day period after the
> date of such publication, comments on the correctness of the proposed ruling or
> decision.  After consideration of any comments received, the Secretary shall
> publish a final ruling or decision in the Customs Bulletin within 30 days after the
> closing of the comment period.  The final ruling or decision shall become
> effective 60 days after the date of its publication.

19 U.S.C. § 1625(c).  Legislative history evinces an intent of Congress to "provide 'assurances

of transparency concerning Customs rulings and policy directives . . . .'" Sea-Land Serv., Inc. v.

United States, 239 F.3d 1366, 1373 (Fed. Cir. 2001) (quoting H.R. Rep. No. 103-361(I), at 124

(1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2674).

This court interpreted the treatment statute in the Precision cases. See Precision Specialty

Metals, Inc. v. United States, 24 CIT 1016, 116 F. Supp. 2d 1350 (2000) ("Precision I");

Precision Specialty Metals, Inc. v. United States, 25 CIT 1375, 182 F. Supp. 2d 1314 (2001)

("Precision II").  Precision I held that "treatment" in the statute refers to "prior actions" of

Customs rather than only to formal policies and administrative rulings. 24 CIT at 1043–44.  This

interpretation was also followed in Precision II. 25 CIT at 1388.  Precision I set forth the

following treatment analysis: "[section] 1625(c)(2) is violated when: (1) an interpretive ruling or decision (2) effectively modifies (3) a 'treatment' previously accorded by Customs to (4) 'substantially identical transactions', and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." 24 CIT at 1040.

Subsequent to the Precision cases, Customs promulgated 19 C.F.R. § 177.12(c)(1)(ii) to clarify its role in implementing the treatment statute.  The regulation provides as follows:

> The determination of whether the requisite treatment occurred will be made by Customs on a case-by-case basis and will involve an assessment of all relevant factors. In particular, Customs will focus on the past transactions to determine whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise reviewed by Customs to determine the proper application of the Customs laws and regulations. For purposes of establishing whether the requisite treatment occurred, Customs will give diminished weight to transactions involving small quantities or values, and Customs will give no weight whatsoever to informal entries and to other entries or transactions which Customs, in the interest of commercial facilitation and accommodation, processes expeditiously and without examination or Customs officer review.

19 C.F.R. § 177.12(c)(1)(ii).

This regulation and the underlying treatment statute were applied in the Motorola cases. See Motorola, Inc. v. United States, 28 CIT 1310, 350 F. Supp. 2d 1057 (2004) ("Motorola I"), aff'd in part, vacated in part, and remanded by Motorola, Inc. v. United States, 436 F.3d 1357 (Fed. Cir. 2006) ("Motorola II").  At issue was whether Customs violated 19 U.S.C. § 1625(c) with respect to circuits used in cellular phone battery packs by modifying treatment accorded to substantially identical transactions without the requisite publication and comment period.  This court initially found that Custom's liquidation of entries through a "bypass" procedure that used random sampling did constitute treatment and held that 19 C.F.R. § 177.12(c)(1)(ii) was an impermissible construction of the treatment statute. Motorola I, 350 F. Supp. 2d at 1072–74.

The Federal Circuit reversed in finding 19 C.F.R. § 177.12(c)(1)(ii) to be a reasonable interpretation of the treatment statute. Motorola II, 436 F.3d at 1366–67 (citing Chevron, 467 U.S. at 842–43).  In Motorola II, the Federal Circuit remanded as follows:

> Customs' construction is a permissible one in light of the ambiguity of the term "treatment" as it applies to the issue presented in this case, i.e., entries liquidated under Customs' "bypass" procedures . . . .  We do not address the validity of the entire regulation for all purposes . . . .  On remand, the trial court will have to address whether the particular bypass entries at issue were processed without review or examination by Customs, and thus fall within the scope of the regulation or whether the goods were examined or the entries otherwise reviewed in a manner that would take them out of the reach of the regulation.

Motorola II, 436 F.3d at 1366–67.

The Federal Circuit, however, affirmed this court's finding that only four of the eight circuits were "substantially identical" under 19 U.S.C. § 1625(c). Motorola II, 436 F.3d at 1367. Motorola I determined that only half of the types of circuits under review were "substantially identical" to those that had been liquidated through the bypass procedure; the "nickel-chemistry based" circuits were found to be "substantially identical" to those previously liquidated, whereas those using "lithium-ion battery cells" were not. Motorola I, 350 F. Supp. 2d at 1074–75.  The Federal Circuit affirmed by holding that "it was reasonable for the trial court to hold that the nickel chemistry parts were 'substantially identical' to the bypass parts, but that the lithium chemistry parts were not." Motorola II, 436 F.3d at 1368.

**2**
**Customs' "No Change" Review of Peerless USA's Entries Constitutes Treatment**

Peerless USA contends that treatment under 19 U.S.C. § 1625(c) and 19 C.F.R. § 177.12(c)(1)(ii) occurred when Customs liquidated its entries "'no change,' meaning without change in the appraised values." Plaintiff's Motion at 17.  According to Peerless USA, the "no change" determinations qualify because in each an Import or Entry Specialist "reviews an entry

11

summary and agrees with the entered values and rates of duty, or there is a net difference of less

than $10 between the total estimated duties and total liquidated duties . . . ." Id. at 24 (citing Ex.

32, Customs Directive 099 3550-071, "Change" and "No Change" Liquidation Notations (July

27, 1994) ("'No Change' Directive")).  Peerless USA asserts that thousands of its entries

liquidated 'no change' by Customs over "the decade prior to the subject entries" constitute

treatment because of the frequent interaction with Customs concerning specific requests for

information. Id. at 26.  Peerless USA emphasizes that these reviews were not of transactions

involving "small quantities or values." Id. (quoting 19 C.F.R. § 177.12(c)(1)(ii)).

        The Precision cases are instructive as to what actions constitute treatment, despite their

pre-dating 19 C.F.R. § 177.12(c)(1)(ii).  In promulgating its final regulation, Customs relied

upon Precision II having "specifically noted 'the consistent trail of correspondence and

submissions in which Precision and its agents describe the entries' . . . and reiterated its holding

in Precision I that 'treatment' looks to the actions of Customs rather than a 'position' or 'policy'

of Customs." T.D. 02-49, 19 CFR Part 177, Administrative Rulings, 67 Fed. Reg. 53,483,

53,490–91 (August 16, 2002) (quoting Precision II, 25 CIT at 1385 n.11, 1388).  Further

commenting on the importance of consistent action, Customs explained that "the key issue in

determining whether a treatment exists is whether, and if so the manner in which, Customs has

taken action on past transactions." Id. at 53,492.

        This court's most recent Motorola decision asked "whether there has been a sufficient

examination or review by Customs" to determine if actions constitute treatment under 19 U.S.C.

§ 1625(c) and 19 C.F.R. § 177.12(c)(1)(ii).  Motorola, Inc. v. United States, 462 F. Supp. 2d

1367, 1375 (CIT 2006) ("Motorola III"), aff'd, Motorola, Inc. v. United States, 509 F.3d 1368

(Fed. Cir. 2007).  Upon remand from the Federal Circuit, Motorola III concluded that "a random

review of two to ten percent of all bypass entries is insufficient to constitute treatment."

Motorola III, 462 F. Supp. 2d at 1378.  As Peerless points out, the random sampling at issue in

Motorola "would have included all bypassed entries from all importers in a given district or

region." Plaintiff's Motion at 25 (emphasis omitted) (citation omitted).

    Customs' "no change" determinations in this case constitute treatment under 19 U.S.C. §

1625(c) and 19 C.F.R. § 177.12(c)(1)(ii).  In contrast to the "bypass" procedure consisting of

random sampling in Motorola, the "no change" determinations involve specific review of

individual transactions. See "No Change" Directive.  Moreover, Customs took an active role in

the "no change" determinations as demonstrated by its interaction in response to Peerless USA's

"CF-28" Requests for Information. See id. at 13–17 (citing Exs. 15, 16, 23–26, 29, 30, 32).  This

communication constitutes a "consistent trail of correspondence and submissions in which"

Peerless described its entries to Customs. See Precision II, 25 CIT at 1385 n.11.  The regular and

active review by Customs in the "no change" determinations therefore qualifies as treatment in

this case.

### 3
### Plaintiff and Defendant Provide Conflicting Interpretations of the Relevant Time Period For Evidence of Treatment

    The treatment statute does not set forth the period of time for which evidence of

treatment is relevant. See 19 U.S.C. § 1625(c).  Customs' implementing regulation contains a

two-year time period, providing that in order to demonstrate treatment:

> There must be evidence to establish that:
>    (A) There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;
>    (B) The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and
>    (C) Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions

> with respect to all or substantially all of that person's Customs transactions
> involving materially identical facts and issues; . . .

19 C.F.R. § 177.12(c)(1)(i) (emphasis added).  The parties disagree as to the relevant time period

for determining whether a treatment occurred and provide conflicting interpretations of the

regulation.

Defendant interprets the relevant time period to be September 6, 1999, through

September 6, 2001.  Defendant's Opposition and Cross-Motion at 14.  Relying upon the

language of "2-year period immediately preceding the claim" in 19 C.F.R. § 177.12(c)(1)(i)(C),

Defendant takes the position that because Peerless USA first claimed "treatment" when the

protest was filed, "the only relevant period within which evidence of treatment is relevant" is the

two years immediately before September 6, 2001. Id. (emphasis omitted).  Defendant supports its

position by stating that the two-year requirement originates from a former regulation having

language that "[t]he evidence of past treatment by [Customs] shall cover the 2-year period

immediately prior to the date of the ruling letter." [3]  Defendant's Supplemental Memorandum

(November 13, 2007) at 2 (emphasis omitted) (quoting 19 C.F.R. § 177.9(e)(2) (1989)).[4]

Defendant contends that its interpretation is compelled by the plain meaning of the regulation

and that the two-year period immediately preceding the date an importer first applies to Customs

seeking a determination regarding treatment is the exclusive time for which evidence of

---

[3] Plaintiff finds support for its interpretation in this former regulatory language because there is an explicit cap on the period of time, in contrast to the language of 19 C.F.R. § 177.12(c)(1)(i), which does not contain any such limitation. Plaintiff's Response to Defendant's Post-Oral Argument Supplemental Memorandum (November 19, 2007) at 4.

[4] Defendant notes Customs' explanation that the two-year period is appropriate in the new regulation because 19 U.S.C. § 1625(c)(2) "was modeled in part from the text of former section 177.9." Defendant's Supplemental Memorandum (November 13, 2007) at 3 (citing T.D. 02-49, 19 CFR Part 177, Administrative Rulings, 67 Fed. Reg. 53,483, 53,494 (August 16, 2002) ("T.D. 02-49")).  Defendant further points out that Customs changed the two-year period to apply "immediately preceding the claim of treatment" because the new triggering date would be "more relevant in identifying the 2-year period for purposes of protecting the treatment rights of a person." Id. (citing T.D. 02-49, 67 Fed. Reg. at 53,494).

treatment is relevant. Defendant's Reply Memorandum in Support of Its Cross-Motion for

Summary Judgment and in Opposition to Plaintiff's Motion ("Defendant's Reply") at 5.

Plaintiff interprets the relevant time period to be September 1995 through July 1997,

"using the earliest entries listed in plaintiff's summons." Plaintiff's Reply and Response to

Cross-Motion at 5.  According to Plaintiff, this is merely "the minimum range of time that

Customs had to have consistently applied its treatment; nothing in the regulation prohibits the

claimant from offering evidence that Customs applied its treatment" over a longer time-frame.

Id. at 4 (emphasis omitted).  Plaintiff rejects Defendant's interpretation as conflicting with both

the regulatory language that makes the time period triggered by the "claim" for treatment, not the

date of protest, and the statutory purpose that is specifically directed at modification of

"treatment previously accorded". Id. at 2–3; 19 U.S.C. § 1625(c)(2).  Plaintiff summarizes its

position as follows:

> Defendant's interpretation, unsupported by any authorities, is completely
> irrational and hostile to the purpose of the statute and regulation, as it has the
> potential to, and in this case does, limit an importer's evidence of "prior" action
> by Customs to entries and liquidations that occurred after the entries for which
> treatment is claimed!

Plaintiff's Reply and Response to Cross-Motion at 2 (emphasis omitted).

Plaintiff also advances a policy-based challenge to Defendant's interpretation.  According

to Plaintiff, measuring the relevant time period from the date of protest following liquidation will

allow Customs to control claims for treatment by manipulating the liquidation date.[5] Id. at 3

(citing United States v. Cocoa Berkau, Inc., 990 F.2d 610, 614 (Fed. Cir. 1993) for the

proposition that this court and the Federal Circuit disfavor and consistently reject interpretations

---

[5] Defendant responds to this argument by stating that Plaintiff "could have applied to Customs for a
treatment determination well before the September 6, 2001 protest was filed . . . .  Any negative consequences
suffered by Peerless USA are clearly the results of plaintiff's own actions."  Defendant's Reply Memorandum in
Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion at 6–7.

of law that put control of limitations periods solely in the hands of one party).  Plaintiff further points out that the regulation was adopted in 2002, subsequent to the entries in question, although it acknowledges that this fact alone is not dispositive. Id. at 4 (citing Motorola II, 436 F.3d at 1366).

The parties' conflicting interpretations of 19 C.F.R. § 177.12(c)(1)(i) need not be reconciled.  Because the treatment statute is not violated under either interpretation, as set forth below, whether and to what extent Defendant's interpretation of the two-year requirement is entitled to deference need not be determined. See Defendant's Opposition and Cross-Motion at 14 (arguing that "the term 'treatment' as used in § 1625(c)(2) is ambiguous and therefore Customs' regulation which clarified what comprises a treatment provided an appropriate and permissible construction of the statute") (emphasis omitted); Plaintiff's Reply and Response to Cross-Motion at 2 (arguing against deference "[b]ecause Customs' interpretation is neither a rational nor permissible interpretation of the statute, and in fact conflicts with the regulatory language").

**4**
**The Transactions Are Not "Substantially Identical" As the Treatment Statute Requires**

Under the treatment statute, "the requirement that transactions be 'substantially identical' does not require complete identity." Cal. Indus. Products, Inc. v. United States, 436 F.3d 1341, 1352 (Fed. Cir. 2006) (holding that "substantially identical transactions" does not require the same parties to the transactions).[6]  In an analysis upheld by the Federal Circuit, this court interpreted the "substantially identical" requirement as follows:

---

[6] The Federal Circuit held that 19 C.F.R. § 177.12(c)(1)(iii)(A) was an impermissible construction of 19 U.S.C. § 1625(c) for limiting treatment consideration to the claimant's "own transactions" contrary to the clear intent of Congress. Cal. Indus. Products, Inc. v. United States, 436 F.3d 1341, 1356 (Fed. Cir. 2006).

> The plain meaning of the phrase "substantially identical" can be discerned from the dictionary definitions of each term. The term "substantial" is defined as "being of considerable importance, value, degree, amount of extent." The term "identical" is defined as "being the same[,] exactly equal and alike[,] having such similarity or near resemblance as to be fundamentally equal or interchangeable.

Motorola I, 28 CIT at 1328–29 (citations omitted); see Motorola II, 436 F.3d at 1367 ("[w]e do not believe that the trial court applied the wrong legal standard."). Applying this standard to the time period advocated by both Defendant and Plaintiff, the transactions receiving treatment are not "substantially identical" to those in HQ 547108. Customs was consequently not required to publish HQ 547108 and give Peerless USA an opportunity to comment before liquidating the merchandise with increased duties, and therefore did not violate 19 U.S.C. § 1625(c).[7]

### (a)
### The Transactions Are Not "Substantially Identical" Using Defendant's Interpretation

Defendant contends that review is limited to Peerless USA's transactions within two years preceding the claim of treatment: between September 6, 1999 and September 6, 2001. During this period, Customs liquidated 236 Peerless USA entries, with 153 of those entries identified as having been liquidated "no change."[8] Defendant's Opposition and Cross-Motion Ex. 5, Chi S. Choy Declaration ("Choy Dec.") ¶ 3. Of the "no change" liquidations, 116 were

---

[7] Defendant also alleges that Peerlesss USA's failure to inform Customs of the payments it made for warehousing, general and administrative expenses was a material omission. See Defendant's Opposition and Cross-Motion at 18–19. The applicable regulation provides in pertinent part:

> Customs will not find that a treatment was accorded to a person's transactions if: . . .
>
> (C) The person made a material false statement or material omission in connection with a Customs transaction or in connection with the review of a Customs transaction and that statement or omission affected the determination on which the treatment claim is based; . . .

19 C.F.R. § 177.12(c)(1)(iii). Because there was no violation of the treatment statute in this case, Defendant's argument that Peerless violated 19 C.F.R. § 177.12(c)(1)(iii) will not be addressed.

[8] Additionally, 67 entries were liquidated with increased duties assessed. Defendant's Opposition and Cross-Motion Ex. 5, Chi S. Choy Declaration ("Choy Dec.") ¶ 15. All 67 entries are listed on the summons filed in this action. Id.

consumption entries, the majority of which were non-apparel items.[9] Id. ¶¶ 3, 10–14.  Because

the vast majority of Peerless USA's entries between September 6, 1999 and September 6, 2001

do not involve the sale of men's clothing, they are not substantially identical transactions to those

in HQ 547108.  Plaintiff does not dispute this outcome, but instead counters that Defendant uses

"the wrong period of time" in analyzing whether the transactions are "substantially similar" to

those in HQ 547108. Plaintiff's Reply and Response to Cross-Motion at 6.  Under Defendant's

interpretation of 19 C.F.R. § 177.12(c)(1)(i), Customs did not violate 19 U.S.C. § 1625(c).

**(b)**
**The Transactions Are Not "Substantially Identical" Using Plaintiff's Interpretation**

Under the interpretation advocated by Plaintiff, the relevant period is, at a minimum,

between September 1995 and July 1997.  During this two-year period, Customs liquidated

approximately 940 entries as "no change".  Plaintiff's Response to Additional Facts Ex. A,

Declaration of Robert E. Casey ¶¶ 4–5.  Plaintiff contends that the relevant period for

considering evidence of treatment is the decade "between 1990 and 2000," during which time

"Customs made more than 3000 'no change' liquidations of plaintiff's garments".[10] Plaintiff's

Motion at 18.  Consideration of this timeframe, however, reaches the same result that Peerless

USA's transactions are not substantially identical to those in HQ 547108.

---

[9] Of the 116 consumption items, 55 were articles returned to the U.S. after export for alteration or repair, 18 were entered as articles of plastic, 10 were entered as machines, 8 were entered as articles exported and then returned having been advanced in value or improved in condition by a manufacturing process while abroad, 3 were entered under the provision for wood clothes hangers, 6 were entered as woven labels, and 4 were entered under the heading for paper labels. Choy Dec. ¶¶ 10–12. Further, 6 consumption entries were: (1) entered under the heading for samples, (2) entered as metal mountings and fittings, (3) entered as "other" articles of iron or steel, (4) entered under the heading providing for ceramic ware, (5) entered as sewing thread, and ( 6) entered as woven fabric. Id. ¶ 13.  The remaining consumption entries were entered as wearing apparel or textile and apparel goods from Canada or Mexico. Id. ¶ 14.

[10] Plaintiff calculates that 93% of its entries between 1990 and 1999 were liquidated as "no change" by Customs and explains that Customs liquidated with refunds to Peerless USA in all other instances. Plaintiff's Motion Ex. 9, Affidavit of Gerald Horn ¶¶ 8, 9, 12.

Defendant provides evidence of significant changes in the makeup of the value factors and intercompany dealings between Peerless USA and Peerless Canada so as to render transactions during Peerless USA's alleged treatment period dissimilar. Defendant's Opposition and Cross-Motion at 15–18.  These changes include the tripling in size of Peerless's data entry department, the implementation of a computer tracking system in Montreal, the addition of data input personnel and the creation of a human resources department by Peerless Canada. Id. at 17–18; Defendant's Reply at 9.  Peerless's expense allocation "percentages were examined on a monthly basis and adjusted annually". Plaintiff's Motion Ex. 13, Affidavit I of Carmen Lamonica ¶ 9. As Plaintiff explained to Customs, Peerless USA's sales and costs increased greatly throughout the decade, necessitating an annual adjustment of the intercompany pricing. See Defendant's Opposition and Cross-Motion Ex. 6, letter from Gerald Horn, Sandler, Travis & Rosenberg, P.A., to Virginia Brown, Acting Chief, Value Branch, Customs (March 21, 2001), at 2 ("[o]ver the last decade, the level of sales to Peerless USA has increased threefold.  As a result of this increase, the costs associated with both the production and sale of the merchandise have increased greatly."); Plaintiff's Motion Ex. 16, letter from Gerald Horn, Soller, Shayne & Horn, to J. Induni, Import Specialist, Customs (December 21, 1995), at 2 (CMT prices are "adjusted on a seasonal basis").

Peerless's management salaries demonstrate the dissimilarity of the transactions receiving treatment during the period that Peerless USA advocates and those in HQ 547108.  The allocation schedule reveals the percentage of these salaries attributable to Peerless USA having "changed from 50% ($7,368,425.00 CDN) in 1996 to 90% ($10,104,247.00) in 1997 to 75% ($5,456,760.00) in 1998". Defendant's Opposition and Cross-Motion at 16.  Consequently, there was more than "only an insubstantial difference between" Peerless USA's transactions

receiving the treatment and those at issue in HQ 547108. <u>See</u> <u>Cal. Indus. Products, Inc.</u>, 436 F.3d at 1352.  Plaintiff acknowledges this fluctuation, but claims that it is the result of non-dutiable bonuses.  Plaintiff's Reply and Response to Cross-Motion at 8–9.  Defendant disputes the Peerless management salaries being comprised of bonuses. Defendant's Opposition and Cross-Motion at 16 n.6; Defendant's Reply at 14; Defendant's Fact Response ¶ 33.  Without having to ascertain the makeup of Peerless's management salaries, the substantial change in allocation percentage between 1996 and 1998 establishes that the transactions liquidated by Customs using the "no change" review are not "substantially identical transactions" to those in HQ 547108.

Plaintiff is unable to establish that Peerless USA made the same additional undeclared payments to Peerless Canada because the underlying factors changed constantly.  To prevail under its interpretation of 19 C.F.R. § 177.12(c)(1)(i), Plaintiff must demonstrate that the HQ 547108 entries and those throughout the 1990s—or at least between 1995 and 1997— "reflect[ed] substantially identical production costs, production overhead and intercompany dealings between Peerless USA and Peerless Canada." Defendant's Reply at 9.  Plaintiff contends that the imported merchandise receiving treatment similarly "involved dutiable suits, jackets and pants". Plaintiff's Reply and Response to Cross-Motion at 7.  However, this is not a classification case where the determination hinges primarily upon the characteristics of the imported merchandise. <u>See</u> Defendant's Reply at 8–9; <u>Peugeot Motors of Am., Inc. v. United States</u>, 8 CIT 167, 171, 595 F. Supp. 1154 (1984) ("[a]ppraisement is conceptually different from classification."). While the intercompany dealings need not be "complete[ly] identi[cal]", <u>Cal. Indus. Products, Inc.</u>, 436 F.3d at 1352, they are sufficiently dissimilar in this case.  That Customs ultimately employed a uniform numerical factor to increase the declared values does

not render the transactions "substantially identical" for purposes of the treatment statute, as

Plaintiff argues. See Plaintiff's Reply and Response to Cross-Motion at 8.  Using Plaintiff's

proposed time-period for reviewing evidence of treatment, Customs did not violate 19 U.S.C. §

1625(c) despite the lack of notice and comment period for HQ 547108.

**B**
**Customs Improperly Replaced Peerless's Allocation of Non-Warehousing Expenses**

At issue is Peerless's method of allocating WEA expenses between Peerless USA and

Peerless Canada.  Plaintiff and Defendant disagree as to whether this allocation complies with

GAAP and 19 U.S.C. § 1401a.  Although Peerless complied with GAAP in Canada, Customs

appropriately found the warehousing expenses to be entirely dutiable based upon prior Customs

determinations.  For the remaining WEA expenses found dutiable, however, Customs improperly

replaced Peerless's allocation.  Upon remand, Customs is instructed to reallocate the duties for

the following expense categories in accordance with Peerless's methodology: management

salaries, data entry salaries, office salaries and supplies, computer supplies, telephone expenses,

and buying salaries.

**1**
**Statutory Overview**

The appraisement of imported merchandise is governed by 19 U.S.C. § 1401a.  One of

several methods explicitly authorized is "computed value".[11] Id. § 1401a(a)(1)(E).  The statute

provides that computed value is to include "an amount for profit and general expenses equal to

---

[11] The statute defines "Computed value" as the sum of:
  (A) the cost or value of the materials and the fabrication and other processing of any kind
employed in the production of the imported merchandise;
  (B) an amount for profit and general expenses equal to that usually reflected in sales of
merchandise of the same class or kind as the imported merchandise that are made by the producers
in the country of exportation for export to the United States;
  (C) any assist, if its value is not included under subparagraph (A) or (B); and
  (D) the packing costs.
19 U.S.C. § 1401a(e)(1).

that reflected in sales of merchandise of the same class or kind as the imported merchandise that

are made by the producers in the country of exportation for export to the United States." <u>Id.</u> §

1401a(e)(1)(B). The statute further defines GAAP and provides the circumstances when Customs

is to accept a GAAP-compliant appraisement, as follows:

> <u>information that is submitted by an importer</u>, buyer, or producer in regard to the
> appraisement of merchandise <u>may not be rejected</u> by the customs officer
> concerned on the basis of the accounting method by which that information was
> prepared, <u>if the preparation was in accordance with generally accepted accounting
> principles.</u> The term "generally accepted accounting principles" refers to any
> generally recognized consensus or substantial authoritative support regarding—
>    (A) which economic resources and obligations should be recorded as assets and
> liabilities;
>    (B) which changes in assets and liabilities should be recorded;
>    (C) how the assets and liabilities and changes in them should be measured;
>    (D) what information should be disclosed and how it should be disclosed; and
>    (E) which financial statements should be prepared.
>
> <u>The applicability of a particular set of generally accepted accounting principles
> will depend upon the basis on which the value of the merchandise is sought to be
> established.</u>

<u>Id.</u> § 1401a(g)(3) (emphasis added).

The statute gives importers flexibility with respect to their method of appraisement.

Legislative history evinces an intent of Congress "to allow the importer . . . to prepare his figures

in any one of a variety of acceptable methods, and Customs will not reject the manner in which

such information is organized, so long as the preparation and methods are in accordance with

[GAAP]." H.R. Rep. No. 96-317, at 86 (1979), <u>as reprinted in</u> 3 Legislative History of the Trade

Agreements Act of 1979.  Importers may comply with GAAP in the country of export, provided

that the value figures are not in question or otherwise unreliable. <u>See</u> <u>LaPerla Fasions, Inc. v.</u>

<u>United States</u>, 22 CIT 393, 401, 9 F. Supp. 2d 698 (1998) (citing <u>VWP of Am., Inc. v. United</u>

<u>States</u>, 21 CIT 1109, 1117–18, 980 F. Supp. 1280 (1997), <u>vacated on other grounds and</u>

<u>remanded</u>, 175 F.3d 1327 (Fed. Cir. 1999)).

Customs is not compelled to accept an importer's allocation that complies with GAAP in its country of origin. VWP, 21 CIT at 1118 ("value comparisons using allocations of costs verified and in compliance with GAAP do not necessarily provide . . . accurate information with respect to the import statute in the U.S."). Customs determines the "applicability" of a GAAP-compliant appraisement "depend[ing] upon the basis on which the value of merchandise is sought to be established." 19 U.S.C. § 1401a(g)(3).[12] Legislative history confirms that the statute "should not be construed in a manner which forces [Customs] to accept the information solely because it is prepared and submitted in a manner which is in accordance with [GAAP]". S.R. No. 96-249, at 118 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 504 (emphasis omitted). "GAAP, as a general matter, is only an accounting method, and does not speak to whether a[n] item may be dutiable for Customs purposes." Merck, Sharp & Dohme Intl. v. United States, 20 CIT 137, 144 n.5, 915 F. Supp. 405 (1996).

Although Customs valuation rulings are not entitled to Chevron deference, they are entitled to a degree of respect proportional to their power to persuade. Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 140); Christensen, 529 U.S. at 587. When determining whether to accept Customs' appraisement, a court can balance the evidence concerning GAAP compliance provided by the parties. See Merck, 20 CIT at 144. The Federal Circuit rejected an importer's appraisement despite compliance with GAAP in Samsung Electronics Am., Inc. v. United States, 195 F.3d 1367 (Fed. Cir. 1999). There, the importer's appraisement was not accepted because "the set of GAAP employed by Samsung, i.e., annual cost accounting, is not applicable . . . and more specific proof is necessary, which may be obtained and offered under a

---

[12] This statutory language overcomes Plaintiff's contention that Customs must accept a GAAP-compliant methodology "without further adjustment." See Plaintiff's Motion at 29 (citing Customs Headquarters Ruling Number 543412 (April 3, 1985)).

different set of GAAP." Id. at 1372.  Customs must therefore have a sufficient justification

before it can reject and replace an importer's GAAP-compliant intercompany expense allocation

with an allocation that employs an alternate methodology.

## 2.
### Peerless's Allocation Complied With GAAP and 19 U.S.C. § 1401a(e)

At issue is Peerless's allocation of WEA expenses among Peerless Canada and Peerless

USA.  Peerless allocated the entire warehousing expenses to Peerless USA, while the remaining

categories found dutiable were allocated between Peerless USA and Peerless Canada on a

percentage basis.  Plaintiff provides affidavits, depositions, and log sheets explaining its

allocation. See affidavits attached to Plaintiff's Motion Ex. 20, letter from Gerald Horn, Soller,

Shayne & Horn, to David Spence, Office of Regulations and Rulings/ Value Branch, Customs

(September 29, 1999) ("1999 Horn Letter").  Peerless's allocation relied upon the relative

percentage of sales of the related companies and management's estimates of how much time and

effort were applied to a particular expense, along with the degree to which each company

benefited from the expense. Id. at 32–33 (citing affidavits attached to 1999 Horn Letter and

Plaintiff's Motion Ex. 19, Affidavit II of Carmen Lamonica ¶ 7).

The methodology that Peerless used to allocate expenses among Peerless USA and

Peerless Canada complied with GAAP in Canada.  An independent accounting firm employed by

Peerless verified the allocation being compliant with Canadian GAAP. Id. Ex. 35, Affidavit of

Michael Frankel ("Frankel Aff.") ¶ 5.  According to the Canadian Institute of Chartered

Accountants ("CICA"), the GAAP standard applicable to related party overhead is that of

reasonableness based upon professional judgment. Id. Ex. 33, CICA Handbook Excerpts § 1000

¶¶ .43, .44.  The accountant employed by Peerless explains that its allocation satisfies this

standard because Peerless Canada rendered services on behalf of Peerless USA, and "incurred

expenses and in accordance with GAAP recognized revenues (arising from the sale of goods) for the services provided to Peerless USA," which was charged back for those services by Peerless Canada. Frankel Aff. ¶¶ 6, 25–26, 28–29.

The report submitted by Defendant's expert does not undermine compliance of Peerless's allocation with Canadian GAAP.  The accountant employed by Peerless concludes that its allocation remains reasonable in light of the concerns that Defendant's expert raises. Id. ¶ 36. Defendant's expert, when addressing the standard with which to judge related party overhead, only finds that there is "some question" whether Peerless's chosen method is reasonable, and provides scenarios in which the allocation could possibly be unreasonable or in which a different result might be reached, rather than definitive examples of unreasonable outcomes. Id. Ex. 36, Expert Report of Carolyn Orth, Zeifman & Company, LLP, at 12, 23.  Defendant provides alternative allocation methodologies, but fails to establish that the method employed by Peerless is unreasonable.  The independent accountant employed by Peerless adequately addresses the objections raised by Defendant's expert and justifiably concludes that Peerless's overhead expense allocation is reasonable.  Therefore, Peerless's chosen method for allocating expenses among Peerless USA and Peerless Canada is in accord with Canadian GAAP.

Peerless further complied with 19 U.S.C.§ 1401a in its use of computed value. Defendant contests Peerless's resort to computed value without first having demonstrated a reason to "bypass the value statute's hierarchical nature" necessary to justify the use of computed value. Defendant's Opposition and Cross-Motion at 35.  However, Defendant provides no support for such a prerequisite in 19 U.S.C. § 1401a.  Defendant next challenges Peerless's compliance with 19 U.S.C. § 1401a(e)(1)(B) in alleging that its computed value assessment failed to show consistency with other producers in Canada. Id.  At issue is an evaluation of the

intercompany pricing between Peerless USA and Peerless Canada. <u>See</u> Plaintiff's Motion Ex. 17, KPMG Transfer Pricing Study Update 1997 Report ("KPMG Study").  Defendant contends that the KPMG Study is irrelevant because it does not compare Peerless to Canadian manufacturers. Defendant's Opposition and Cross-Motion at 35.

The statutory requirement that computed value be consistent with other producers in the country of export is not absolute.  When an exporting manufacturer makes a diligent effort to find a comparable manufacturer in the country of export but cannot do so, it can use profits of manufacturers in other comparable countries or actual profits in making its computed value determination. <u>See</u> <u>Meadows Wye & Co., Inc. v. United States</u>, 58 Cust. Ct. 746, 750–51 (1967), and <u>Meadows Wye & Co., Inc. v. United States</u>, 64 Cust. Ct. 713, 717–18, 314 F. Supp. 54 (1970) (applying principle to constructed value under the previous statute).  The KPMG Study establishes that Peerless USA lacks a comparable competitor in Canada, rendering it impossible to compare its methods to manufacturers of merchandise of the same class or kind from its country of origin.  <u>See</u> KPMG Study at 32.  The KPMG Study further includes detailed analyses of the chosen companies and their financial data, as well as the companies it rejected for lack of compatibility. <u>Id.</u> Apps. 1–3.  Plaintiff was diligent in seeking comparable manufacturers and therefore did not violate 19 U.S.C. § 1401a(e) in its use of computed value.

**3**
**Customs Must Accept Peerless's Allocation For WEA Categories Other Than Warehousing**

Customs is not automatically required to accept an importer's expense allocation that complies with GAAP and 19 U.S.C. § 1401a(e). <u>See</u> 19 U.S.C. § 1401a(g)(3); <u>Samsung</u>, 195 F.3d at 1372; <u>Merck</u>, 20 CIT at 144 n.5; <u>VWP</u>, 21 CIT at 1118.  To the extent that Customs provides a persuasive rationale, it is entitled to a proportional degree of deference. <u>Mead</u>, 533 U.S. at 235.  Customs here provides a sufficient justification to reject Peerless's allocation of the

warehousing expenses but not for the remaining WEA categories found dutiable.  Therefore,
upon remand, Customs is instructed to reallocate the duties for the following expense categories
in accordance with Peerless's methodology: management salaries, data entry salaries, office
salaries and supplies, computer supplies, telephone expenses, and buying salaries.

**(a)**
**Customs Appropriately Found Peerless's WEA Warehousing Category Dutiable**

Customs completely reversed Peerless's allocation of WEA warehousing expenses that
were entirely excluded from CMT and MPR.  In finding the warehouse expenses fully dutiable,
Customs relied upon previous determinations from 1992 and 1995. Audit Report at 8; HQ
547108 at 6. In Customs Headquarter Ruling Letter Number 544758 (February 21, 1992) ("HQ
544758"), Customs "determined that in the instance when the importer paid the warehousing
charges to the seller, but not to the unrelated third party, the charges were part of the price
actually paid or payable for the merchandise." HQ 547108 at 6.  In Customs Headquarters
Ruling Number 545663 (July 14, 1995) ("HQ 545663"), Customs "determined that fees paid to
the warehouse proprietor, a party related to the manufacturer, for pre-production warehousing
costs incurred for raw materials were part of the price actually paid or payable for the imported
merchandise." Id.  Relying on these determinations, Customs reached the following conclusion:

> As the warehousing expense, in this case, is for storage of the fabric pre-
> production and storage of merchandise before shipment, this expense is related to
> the imported merchandise.  Additionally . . . it is paid by the buyer directly to the
> seller.  Therefore, we find that the entire warehouse expense is included in the
> price actually paid or payable.

Id.

The materials for Peerless USA were warehoused in the Peerless Canada manufacturing
facility. Plaintiff's Facts ¶ 12; Defendant's Fact Response ¶ 12.  "Peerless USA, at all times, was
the owner of the fabric and . . . also the owner of the finished garments". Frankel Aff. ¶ 18.

Plaintiff contends that because the materials were owned by an importer that is related to the manufacturer, a 1990 Customs determination deems the warehousing charge non-dutiable. Plaintiff's Post-Oral Argument Brief (November 9, 2007) at 3 citing Customs Headquarters Ruling Number 544323 (March 8, 1990) ("HQ 544323")).  However, Defendant distinguishes HQ 544323 because, "in it, no payments were made from the buyer/importer to the seller or party related to the seller for such warehousing services." Defendant's Memorandum in Response to Plaintiff's Post Argument Brief (November 26, 2007) at 4–5 (citing HQ 545663). Defendant further explains that HQ 545663 is on point; there, materials were warehoused in the same complex as the manufacturing facility and Customs held that the fee paid for storage was dutiable. Id.  Because Peerless USA's materials were warehoused in the same building as the manufacturing plant, Customs appropriately followed HQ 545663 to find Peerless USA's WEA warehousing expenses dutiable. See id. at 4 n.3.

HQ 547108 "may surely claim the merit of its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight." Mead, 533 U.S. at 235.  Customs' allocation of Peerless USA's warehousing expenses fits squarely with HQ 545663 and HQ 544758, and is distinguishable from HQ 544323.  Reviewing courts are to consider "consistency with earlier" determinations in ascertaining whether to afford deference to Customs. Id. at 228 (citing Skidmore, 323 U.S. at 140).  Customs conducted a "thorough and carefully reasoned analysis" in finding Peerless USA's warehousing expenses entirely dutiable in HQ 547108. See Four Seasons Produce, Inc. v. United States, 25 CIT 1395, 1403 (2001). Although Peerless's allocation comports with GAAP and 19 U.S.C. § 1401a(e), Customs properly rejected its "applicability" for the WEA warehousing expenses. 19 U.S.C. § 1401a(g)(3).

**(b)**
**Customs Must Accept Peerless's Allocation For the Remaining Dutiable WEA Categories**

In contrast to the warehousing expenses, Customs provides an insufficient basis to depart from Peerless's allocation of the remaining WEA categories found dutiable.  Plaintiff demonstrates that Peerless's GAAP-compliant methodology resulted in an appropriate allocation for these expense categories that include the following:

- Management salaries: Peerless establishes that "almost all of management's time is spent in day-to-day, hands-on, overseeing of the operation of Peerless [USA].  Accordingly, it would be appropriate for the substantial portion of the salaries paid to be apportioned to the U.S. company." 1999 Horn Letter at 10, affidavits attached thereto.  Peerless approximated that 90% of management's time was allocated to activities benefitting Peerless USA. Plaintiff's Motion at 33.

- Data entry salaries: Peerless allocated approximately 95% of these expenses to Peerless USA because "virtually all of the data entry salaries . . . were paid to employees who entered the Peerless USA salesman's customer orders." Id. at 34 (citing Ex. 3, Deposition of Carmen Lamonica at 37–40).

- Computer supplies: Peerless establishes that these expenses "overwhelmingly" serviced Peerless USA, as the "entire computer system developed in Montreal was used and maintained to process Peerless USA's orders." Id. at 35 (citing Ex. 11, Deposition of Barbara Segal at 10, 26, 32).

Customs asserts that its allocation is "commensurate with the work performed and the risk taken by [Peerless Canada] and [Peerless USA]". Id. Ex. 7, Audit Report at 9.  However, Customs adduces no evidence of fraud, falsehood, or inaccuracy with respect to Peerless's GAAP-compliant allocation.  Customs' audit acknowledges the adequacy of Peerless's

intercompany pricing. See id. at 5 ("the invoices covering the shipment of garments to the U.S. were accurately recorded . . . . [W]e concluded that [Peerless Canada's] system for recording costs associated with the production of the wool garments was adequate.").  Moreover, the evidence that Customs provides is either nonexistent or not persuasive.  In contrast to the testimony supporting Peerless's computer expense allocation, Customs based its allocation on an "observation . . . that the computer is extensively used to support the production process." HQ 547108 at 8.  Similarly, Customs replaced Peerless's management salary allocation that was supported by testimony merely because all but one manager "are domiciled in Canada, receive their compensation from Peerless and spend approximately 85 percent of their time in Montreal." Id. at 7.

Customs was therefore not justified in allocating the dutiable non-warehousing WEA categories based on "the ratio of costs incurred" between Peerless USA and Peerless Canada. See id. at 8.  Without substantiation, Customs is not entitled to replace Peerless's GAAP-compliant expense allocation with its own. See 19 U.S.C. § 1401a(g)(3).  Balancing the evidence favors the importer, as in Merck where the plaintiff:

> provided ample evidence to show that its method of determining cost of production is the predominant method used throughout the industry, and is in accordance with GAAP. In contrast, the defendant failed to present any evidence, either directly or through cross-examination of Merck's witnesses, showing that the costs that Merck excluded were clearly production related.

Merck, 20 CIT at 144.  Defendant here similarly fails to sufficiently counter the importer's GAAP-compliant methodology, and unconvincingly flips the argument in stating that "Customs' appraisers found no evidence to establish that those costs were unrelated to the imported merchandise." Defendant's Opposition and Cross-Motion at 28.  Without a more reasoned basis, Customs is not able to replace Peerless's GAAP-compliant appraisal.

This outcome is in accord with Samsung. There, the Federal Circuit rejected an importer's GAAP-compliant methodology because the set of GAAP used did not match the set needed to obtain an accurate accounting. Samsung, 195 F.3d at 1372.  Defendant here contends that the expenses should or could be allocated differently, but gives no reason as to why the set of GAAP used by Peerless is inappropriate. See Defendant's Opposition and Cross-Motion at 38–39 (arguing that under computed value, the expenses "may well be part of an amount for Peerless Canada's general expenses and profit that must be added to the cost of labor, cost of materials and cost of packing.").  In contrast to the importer in Samsung, Peerless's allocations for the non-warehousing WEA categories apply a set of GAAP that responds effectively to the "basis upon which the value of merchandise is sought to be established." 19 U.S.C. § 1401a(g)(3).

For the foregoing reasons, this case is remanded to Customs to reallocate the following expense categories in accordance with Peerless's methodology: management salaries, data entry salaries, office salaries and supplies, computer supplies, telephone expenses, and buying salaries.

**V**
**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is Granted in Part and Denied in Part, and Defendant's Motion for Summary Judgment is Granted in Part and Denied in Part.  Customs' determination is partially sustained and partially remanded for action consistent with this Opinion.


     __/s/ Evan J. Wallach____
     Evan J. Wallach, Judge


Dated: January 13, 2009
   New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

PEERLESS CLOTHING INTERNATIONAL, INC., :
                                          :

                 Plaintiff,          :

                                            :     Before:       WALLACH, Judge
    v.                             :     Court No:    03-00537

                                            :
UNITED STATES,               :

                              :
                 Defendant.      :

## ORDER AND JUDGMENT

This case having come before the court upon the Motion for Summary Judgment filed by Plaintiff Peerless Clothing International, Inc. ("Plaintiff's Motion") and the Cross-Motion for Summary Judgment filed by Defendant United States ("Defendant's Motion"); the court having reviewed all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED, ADJUDGED and DECREED that Defendant's Motion is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED, ADJUDGED and DECREED that the decision of the United States Bureau of Customs and Border Protection ("Customs") in Customs Headquarters Ruling Letter Number 547108 (March 28, 2000) ("HQ 547108") and Customs Headquarters Ruling Letter Number 548065 (September 6, 2002) ("HQ 548065") is hereby AFFIRMED as to warehousing expenses; and it is further

ORDERED, ADJUDGED and DECREED that the decision of Customs in HQ 547108 and HQ 548065 is hereby REMANDED to Customs and Customs is directed, as is more fully discussed in this court's Opinion, to reallocate the following expense categories: management salaries, data entry salaries, office salaries and supplies, computer supplies, telephone expenses, and buying salaries; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Wednesday, January 21, 2009, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative language for any portions they wish deleted. If a party determines that no information needs to

be deleted, that party shall so notify the court in writing on or before January 21, 2009.

Dated: January 13, 2009          /S/_____ Evan J. Wallach _____
      New York, New York                    Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                              Deputy Clerk