Slip Op. 09-86

UNITED STATES COURT OF INTERNATIONAL TRADE

---

:
PEERLESS CLOTHING INTERNATIONAL, INC., :
:
                Plaintiff, :
:   Before:    WALLACH, Judge
     v. :   Court No:  03-00537
:
UNITED STATES, :
:
                Defendant. :
                                                     :

[Defendant's Motion for Rehearing or Reconsideration is DENIED.]

Dated:     August 13, 2009

Sandler, Travis & Rosenberg, P.A. (Arthur K. Purcell) for Plaintiff Peerless Clothing International, Inc.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Edward F. Kenny); and Chi S. Choy, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, Of Counsel, for Defendant United States.

**OPINION AND ORDER**

**Wallach, Judge:**

**I
INTRODUCTION**

Plaintiff Peerless Clothing International, Inc. ("Peerless USA") commenced this action contesting the appraisement and assessment of certain duties by the United States Customs and Border Protection ("Customs") on garments imported into the United States. This court granted in part and denied in part both Peerless USA's Motion for Summary Judgment and Defendant United States' ("Defendant") Cross-Motion for Summary Judgment. Peerless Clothing Int'l, Inc. v. United States, 602 F. Supp. 2d 1309 (CIT 2009) ("Peerless I"). Accordingly, this court

remanded to Customs with instructions to reallocate specific expense categories that Customs had found dutiable. Defendant subsequently filed a Motion For Rehearing or Reconsideration ("Defendant's Reconsideration Motion") requesting reconsideration of Peerless I such that the underlying appraisement and assessment of Customs be affirmed in its entirety. Oral argument on Defendant's Reconsideration Motion took place on May 28, 2009. While the court has carefully considered Defendant's Reconsideration Motion and this Opinion represents a reconsideration of Peerless I, to the extent it seeks to change the result of Peerless I, the Motion is denied because the requisite standard is not satisfied.

## II
## BACKGROUND

Peerless Clothing, Inc. ("Peerless Canada") is the largest manufacturer of men's wool suits in North America. Peerless I, 602 F. Supp. 2d at 1313 (citation omitted). In the 1980s, Peerless Canada created Peerless USA, a separate legal entity sharing common senior management and corporate officers, to import merchandise into the United States (Peerless Canada and Peerless USA are collectively referred to as "Peerless"). Id. (citations omitted). The subject garments were purchased by Peerless USA from Peerless Canada through related party transactions. Id. (citations omitted). For appraisement by Customs, Peerless calculated intercompany price using two types of invoices that Peerless Canada issued to Peerless USA: the cost of manufacturing known as "cut, make & trim" ("CMT"); and the cost of fabric known as material purchase recovery ("MPR"). Id. (citations omitted). During an audit initiated in 1997, Customs examined CMT, MPR and a third type of invoice that Peerless Canada issued to Peerless USA but was not declared to Customs consisting of eleven categories of warehousing, general and administrative expenses known as Warehousing and Expense Allocation ("WEA").

Id. (citations omitted).  Peerless USA claimed that these expenses were either not dutiable or had already been allocated and captured in CMT. Id. at 1314 (citations omitted).

Customs in March 2000 determined that Peerless USA owed additional dutiable value on certain WEA categories. Customs Headquarters Ruling Letter Number 547108 (March 28, 2000) ("HQ 547108").  Customs agreed with Peerless that the following three WEA categories were "not included in the price" and therefore not dutiable: "expenses for shipping truck rental, selling expenses, and travelling and selling expenses." HQ 547108 at 3.  Customs further accepted Peerless' 50 percent allocation of the WEA category for shipping salaries. Id. at 6.  In contrast to Peerless, Customs found that the entire WEA category for warehousing was dutiable. Id. at 6. For the six remaining WEA categories, Customs found that "92.2 percent of the management salaries, data entry salaries, office salaries and supplies, computer supplies, telephone and buying salaries were to be included in the price of the imported clothing." Id. at 9.  Customs in September 2002 denied the protest of HQ 547108. Customs Headquarters Ruling Letter Number 548065 (September 6, 2002) ("HQ 548065").

Peerless USA commenced this action in August 2003 contesting the imposition of duties on the WEA categories by Customs.  Specifically, Peerless USA argued that Customs violated: (1) 19 U.S.C. § 1625(c) by modifying "treatment" of the imported garments without the statutorily required review and comment period, and (2) 19 U.S.C. § 1401a by replacing Peerless' expense methodology that complied with generally accepted accounting principles ("GAAP"). Peerless I, 602 F. Supp. 2d at 1312.  This court in January 2009 held that Customs had not violated 19 U.S.C. § 1625(c). Id. at 1318–24.  This court further held that Customs properly found the WEA warehousing category fully dutiable but improperly replaced Peerless' allocation of six WEA categories. Id. at 1327–30. Peerless I determined that Peerless'

intercompany expense allocation complied with both GAAP and the computed value method pursuant to 19 U.S.C. § 1401a(e). Id. at 1326–27.

Defendant now moves for reconsideration of Peerless I, requesting the affirmation of HQ 547108 and HQ 548065. Defendant's Reconsideration Motion at 1. Defendant claims that pursuant to the statutory scheme of 19 U.S.C. § 1401a valuation methods are hierarchical and contends that the court misapplied 19 U.S.C. § 1401a by failing to either apply the transaction value method pursuant to 19 U.S.C. § 1401a(b) or find the transaction value method to be inapplicable. Id. at 8–11. Defendant further claims that Peerless I erroneously relied upon the KPMG Transfer Pricing Study Update 1997 Report ("KPMG Study") to support its computed value conclusion. Id. at 12–14. Peerless USA opposes Defendant's Reconsideration Motion. See Plaintiff's Brief in Opposition to Defendant's Motion for Rehearing or Reconsideration ("Plaintiff's Reconsideration Opposition").

### III
### STANDARD OF REVIEW

USCIT Rule 59 provides that rehearing may be granted "on all or some of the issues -- and to any party -- . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." USCIT R.59(a)(1)(B). This court has articulated the grounds for granting motions pursuant to USCIT Rule 59 as follows:

> A rehearing may be appropriate [for cases in which] there was: (1) an error or irregularity in the trial; (2) a serious evidentiary flaw; (3) a discovery of important new evidence which was not available even to the diligent party at the time of trial; or (4) an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case. In any event, in ruling on a petition for rehearing, a court's previous decision will not be disturbed unless it is "manifestly erroneous."

United States v. Gold Mountain Coffee, Ltd., 8 CIT 336, 336–37, 601 F. Supp. 212 (1984) citing W.J. Byrnes & Co. v. United States, 68 Cust. Ct. 358 (1972), and Quigley & Manard, Inc. v.

United States, 61 CCPA 65, 496 F.2d 1214 (1974). See also Ford Motor Co. v. United States, 30 CIT 1587, 1588 (2006) ("The major grounds justifying a grant of a motion to reconsider a judgment are an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice.").

Motions for reconsideration are granted to correct instances in which there was a "significant flaw" in the original proceedings, not to allow a losing party the chance to repeat arguments or to relitigate issues previously before the court. Ont. Forest Indus. Assoc. v. United States, 30 CIT 1624, 1625, 462 F. Supp. 2d 1261 (2006); see also Starkey Lab. v. United States, 24 CIT 504, 510, 110 F. Supp. 2d 945 (2000) ("rehearing is a means to correct a miscarriage of justice") (quoting Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 585, 623 F. Supp. 1262 (1985) rev'd and remanded on other grounds, 840 F.2d 1547 (Fed. Cir. 1988)); Gold Mountain, 8 CIT at 337. "[T]he purpose of a petition for rehearing under the [USCIT] Rules . . . is to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result." Retamal v. United States, 29 CIT 132, 136 (2005) (citations omitted), vacated in part, rev'd in part, and remanded on other grounds, 439 F.3d 1327 (Fed. Cir. 2006).

**IV
DISCUSSION**

Defendant's Reconsideration Motion is denied because use of the transaction value method that Defendant advocates would not have brought about a different result from Peerless I. See Retamal, 29 CIT at 136. Defendant is certainly correct that 19 U.S.C. § 1401a creates a hierarchy of valuation methods for appraisement with transaction value being the primary method. See Defendant's Reconsideration Motion at 8–11 citing 19 U.S.C. § 1401a; VWP of Am., Inc. v. United States, 175 F.3d 1327, 1330–31 (Fed. Cir. 1999); E.I. Dupont De Nemours &

5

Co. v. United States, 24 CIT 1301, 1307, 123 F. Supp. 2d 637 (2000); 19 C.F.R. § 152.101(b). See also H.R. Rep. No. 96-317, at 80 (1979), as reprinted in 3 Legislative History of the Trade Agreements Act of 1979. The statute permits use of transaction value between related parties but sets out a prerequisite before that value can be used between a related buyer and seller. 19 U.S.C. § 1401a(b)(2)(B).[1] Because the court is convinced that Defendant is correct about the hierarchical nature of the statute, it has used the transaction value method for appraisement between Peerless USA and Peerless Canada in deciding Defendant's Reconsideration Motion.[2] Thus, the amount determined to be dutiable in Peerless I, as revised herein, is comprised of

---

[1] As set forth in 19 U.S.C. § 1401a(b)(2)(B):

> The transaction value between a related buyer and seller is acceptable for the purposes of this subsection if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported merchandise closely approximates—
> (i) The transaction of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States; or
> (ii) The deductive value or computed value for identical merchandise or similar merchandise;
> but only if each value referred to in clause (i) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

The legislative history for this provision explains as follows:

> Since the two methods are alternatives, a finding under either one that the related parties' transaction value is acceptable for customs purposes is sufficient. . . . [T]he fact that the buyer and seller are related will not automatically preclude the availability of transaction value; rather, the U.S. Customs Service will use the alternative methods of determining the applicability of the transaction value. While it is understood that previous examinations by the U.S. Customs Service of a particular relationship may obviate the need to fully examine that relationship in each transaction, the criteria of one of the two alternative methods must always be met to stay in the transaction value.

H.R. Rep. No. 96-317, at 82 (1979), as reprinted in 3 Legislative History of the Trade Agreements Act of 1979.

[2] At oral argument, Plaintiff Peerless Clothing International, Inc. ("Peerless USA") stated that the transaction value method is appropriate in this case.

6

CMT, MPR and the WEA warehousing category which is the transaction value pursuant to 19 U.S.C. § 1401a(b).

Transaction value is defined in relevant part as "the price actually paid or payable for the merchandise when sold for exportation to the United States. . . ." 19 U.S.C. § 1401a(b)(1). The term "price actually paid or payable" is further defined as the "total payment . . . made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller." 19 U.S.C. § 1401a(b)(4)(A). Customs found that Peerless USA owed additional dutiable value on the entire WEA warehousing category and 92.2 percent of six specified WEA categories. HQ 547108 at 6, 9. Defendant claims that the transaction value includes these amounts because "the invoices which comprised the intercompany allocation payments were properly considered part of the 'price actually paid or payable' and Customs was correct in factoring the majority of such costs back into the price following its appraisal." Defendant's Reconsideration Motion at 11–12.

Defendant relies upon Generra Sportswear Co. v. United States, 905 F.2d 377 (Fed. Cir. 1990). Defendant's Reconsideration Motion at 11. There, Customs included separately invoiced quota charges in the transaction value and the importer challenged after "Customs denied the protest, concluding that all monies paid to the seller are includable in transaction value." Generra, 905 F.2d at 378. The Federal Circuit held that "Customs' construction of section 1401a(b), that transaction value may include quota charges, is permissible." Id. at 379. Generra provides the following discussion of the statutory requirement for transaction value:

> As long as the quota payment was made to the seller in exchange for merchandise sold for export to the United States, the payment properly may be included in the transaction value, even if the payment represents something other than the per se value of the goods. The focus of transaction value is the actual transaction between the buyer and seller; if quota payments were transferred by the buyer to the seller, they are part of the transaction value. That transaction value may encompass items other than the pure cost of the imported merchandise is reflected in section 1401a(b)(3), governing exclusions from transaction value. If

7

excludable costs or charges are not identified separately from the price actually paid or payable, they are included in transaction value.

Id. at 380.[3]

Generra does not render all payments by Peerless USA to Peerless Canada part of the transaction value. Although Generra held that Customs permissibly determined the transaction value under 19 U.S.C. § 1401a(b) to include all payments between the buyer and seller in that case, Generra, 905 F.2d at 379–81, it does not follow that the same result is reached here. Peerless USA effectively distinguishes Generra based on

> what Customs itself did in this case: Customs determined that not all payments from plaintiff [Peerless USA] to Peerless Canada were dutiable; it accepted the concept of inter-company overhead expense allocations as permissible; and even fully agreed with some of plaintiff's allocations, while disagreeing with the majority of others only as to the allocation percentage.

See Plaintiff's Reconsideration Opposition at 4 (emphasis removed). By accepting Peerless' allocation of the non-warehousing WEA categories either in their entirety or as to a particular percentage, HQ 547108 at 3, 6, 9, Customs conceded that the transaction value does not necessarily include all payments by Peerless USA to Peerless Canada.

Peerless was found to have appropriately allocated the non-warehousing WEA categories using methodology that complied with Canadian GAAP. Peerless I, 602 F. Supp. 2d at 1328–30, 1326. Therefore, CMT, MPR and the WEA warehousing category comprise the "total payment . . . made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the

---

[3] In their briefs, both Defendant and Peerless USA refer to "the Generra presumption." Defendant's Reply in Support of its Motion For Rehearing or Reconsideration at 2–4; Plaintiff's Brief in Opposition to Defendant's Motion for Rehearing or Reconsideration at 4 n.2. A "presumption" is "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." BLACK'S LAW DICTIONARY (8th Ed. 2004). At oral argument, neither Defendant nor Peerless USA could identify language in the opinion making all payments between a buyer and a seller presumed to be part of the transaction value (the presumption that the precedent is claimed to establish). Because the court also cannot identify any language to this effect, it does not find that such a presumption is created by Generra Sportswear Co. v. United States, 905 F.2d 377 (Fed. Cir. 1990).

8

seller." See 19 U.S.C. § 1401a(b)(4)(A).  This amount is, in fact, the transaction value pursuant to 19 U.S.C. § 1401a(b) and also the computed value pursuant to 19 U.S.C. § 1401a(e), which the court used in Peerless I.  Accordingly, application of transaction value does not change the result in this case.

Defendant additionally seeks reconsideration of the computed value conclusion in Peerless I.  Defendant contends that "the Court erred in relying upon the KPMG Study to establish that plaintiff [Peerless USA] showed due diligence in concluding that Peerless Canada (the manufacturing company) had no competitors in Canada." Defendant's Reconsideration Motion at 12 (emphasis removed).  As previously recognized, the requirement in 19 U.S.C. § 1401a(e)(1)(B)[4] "that computed value be consistent with other producers in the country of export is not absolute.  When an exporting manufacturer makes a diligent effort to find a comparable manufacturer in the country of export but cannot do so, it can use . . . actual profits in making its computed value determination." Peerless I, 602 F. Supp. 2d at 1327 citing Meadows Wye & Co., Inc. v. United States, 58 Cust. Ct. 746, 750–51 (1967), and Meadows Wye & Co., Inc. v. United States, 64 Cust. Ct. 713, 717–18, 314 F. Supp. 54 (1970). See also La Perla Fashions, Inc. v. United States, 22 CIT 393, 401, 9 F. Supp. 2d 698 (1998), aff'd, 185 F.3d 885 (Fed. Cir. 1999) ("Customs wishfully reads into the statute a condition for comparison to unrelated party sales from exporter to importer where there is none.").[5]

---

[4] As set forth in 19 U.S.C. § 1401a(e)(1):

The computed value of imported merchandise is the sum of—
. . .
(B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States; . . . .

[5] "[T]he Court finds that there is no support in the statute for Customs' contention that computed . . . value calculations must be derived from an unrelated manufacturer or exporter.  The Court can envisage scenarios where a manufacturer sells unique merchandise to a single related importer in the U.S.

9

The computed value conclusion in Peerless I was reached without the KPMG Study. Peerless USA accurately explains that disregarding the KPMG Study "would not change the result of this case because it was permissible for the Court, under the language of the statute, to look only to Peerless Canada's ('the producer's') actual profits and general expenses, which were reasonable under the circumstances of the related party sale and consistent during the relevant period. . . . [T]he record otherwise supports the Court's conclusion that Peerless had no real competitors in Canada, and that plaintiff [Peerless USA] was otherwise diligent in setting a price that was reasonable and ensured recovery of all costs and expenses plus a profit." See Plaintiff's Reconsideration Opposition at 8 citing Plaintiff's Motion for Summary Judgment Exhibit 3: Deposition of Carmen Lamonica at 76–77, Exhibit 8: Deposition of Robert L. Roy at 23, 25, 33, and Coats & Clark, Inc. v. United States, 74 Cust. Ct. 13, 16 (1975). Peerless USA provides ample record support for the computed value conclusion in Peerless I being reached without the KPMG Study, see Plaintiff's Reconsideration Opposition at 8–10, including testimony that Peerless Canada lacked a comparable manufacturer in Canada, id., Plaintiff's Rehearing Exhibit A: Deposition of Joel Segal at 119–122.[6]

Peerless I held that the amount dutiable was CMT, MPR and the WEA warehousing category. This sum constitutes the computed value pursuant to 19 U.S.C. § 1401a(e) without the

---

In this situation there would be no comparable unrelated third party transfer with which to compare cost information." La Perla Fashions, Inc. v. United States, 22 CIT 393, 401, 9 F. Supp. 2d 698 (1998). Although this explanation of the statutory requirement for computed value is directly applicable here, the upholding of Customs having rejected the importer's computed value calculations is not because, unlike La Perla, the calculations at issue do not suffer from a "lack of reliability." See id.; Peerless Clothing Int'l, Inc. v. United States, 602 F. Supp. 2d 1309, 1329 (CIT 2009) (finding an absence of "fraud, falsehood, or inaccuracy" as to the subject intercompany allocation).

[6] Additional record support includes testimony that Peerless Clothing, Inc. endeavored to verify the reasonableness of its intercompany pricing. See Plaintiff's Motion for Summary Judgment Exhibit 4: Deposition of Michael Frankel at 42–43, 67–68, 90–91, 96–97, Exhibit 8: Deposition of Robert L. Roy at 23, 25, 33:23–25 ("[w]e always checked with our Customs counsel to make sure that we were within the realm of what was reasonable.").

KPMG Study, as well as "the price actually paid or payable" transaction value pursuant to 19 U.S.C. § 1401a(b).  The non-warehousing WEA categories are not included in the transaction value and need not be, as Customs acknowledged by accepting Peerless' allocation for these categories either in their entirety or as to a particular percentage.  See HQ 547108 at 3, 6, 9.  Because the arguments set forth in Defendant's Reconsideration Motion do not affect the outcome of Peerless I, any change in results due to reconsideration is not "need[ed] to prevent manifest injustice."  See Ford Motor, 30 CIT at 1588.  Peerless I is neither "manifestly erroneous," see Gold Coffee, 8 CIT at 337 (citation omitted), nor "a miscarriage of justice," see Starkey Lab., 24 CIT at 510 (citation omitted), warranting reconsideration pursuant to USCIT Rule 59.

## V
## CONCLUSION

For the above stated reasons, Defendants' Motion for Rehearing or Reconsideration of Peerless Clothing Int'l, Inc. v. United States, 602 F. Supp. 2d 1309 (CIT 2009), is DENIED.

SO ORDERED.

                                          ___/s/ Evan J. Wallach____
                                          Evan J. Wallach, Judge

Dated: August 13, 2009
       New York, New York

# NOTICE OF ENTRY AND SERVICE

    This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

    Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

    or

    Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

    Tina Potuto Kimble
    Clerk of the Court

Date: _____   By: _____
                                                                       Deputy Clerk